VILLANTI, Judge.
Lisa Grigsby appeals from the nonfinal order awarding sole parental responsibility for her four minor children to their father, Lonnie Grigsby, and “temporarily completely” suspending her time-sharing with the children. We have carefully reviewed the troubling record in this case in light of the six issues raised by the Mother. Based on this review, we hold that the trial court did not abuse its discretion in awarding the Father sole parental responsibility and in temporarily suspending the Mother’s time-sharing with the children. However, we do find that the trial court erred by not including in its order the specific conditions the Mother must satisfy in order to reestablish time-sharing with her children and that it abused its discretion by delegating to the Father the determination of whether and when time-sharing can be reestablished. Therefore, on these two narrow issues, we reverse and remand for further proceedings.
The Mother and Father were married in 1991, and they separated in 2003. In 2004 the Mother filed a petition for injunction for protection against domestic violence on behalf of the parties’ four minor children, alleging that the Father was using inappropriate corporal punishment to discipline the children. While the circuit court granted this petition and entered the injunction, it nevertheless also permitted the Father to have regular unsupervised visitation with the children. The Father exercised this visitation, apparently without incident, and the Mother subsequently had the injunction dissolved in July 2006.
For reasons not apparent from the record, shortly after having the injunction dissolved the Mother began a campaign to alienate the Father from the children. Then, in December 2006, she filed her petition for dissolution of marriage. In that petition, the Mother sought sole parental responsibility for the children. The Father filed a counterpetition in which he sought sole parental responsibility for the children. In his counterpetition, the Father also requested that the court “determine an appropriate parenting schedule and contact schedule which provides the children with meaningful access to their mother taking into consideration, the mother’s active attempts to alienate the minor children from their father.” The Father also requested that the court “determine if temporary measures are necessary to normalize the relationship between the father and the children and to enter that temporary relief, to normalize those relationships.”
The trial court bifurcated the dissolution proceedings and addressed the parental responsibility and time-sharing issues . during a four-day evidentiary hearing. At that hearing, the evidence established that after the injunction was dissolved the Mother refused to encourage the children to participate in scheduled time-sharing, and she refused to allow the Father to see the children at other times. When the Father attended- the children’s school functions *456 and sports activities, the Mother threatened to obtain a new injunction against him. After the petition for dissolution was filed, the Mother refused to comply with the court’s temporary order regarding time-sharing. Instead, she reported to the Department of Children & Family Services that the Father was sexually abusing the children. The Department determined this report to be unfounded, but the Mother’s actions succeeded in preventing the Father from seeing the children for a period of time. Along similar lines, the evidence showed that the Mother filed various police reports alleging criminal activity by the Father, including a report that the Father should be investigated in connection, with a high-profile case involving the disappearance of a young girl from her home in North-port. All of the complaints underlying these police reports were determined to be unfounded.
In addition, during the pendency of the dissolution case, the Mother refused to cooperate with the parenting coordinator appointed by the court. She also filed complaints with the state against the licenses of the psychologists and social workers appointed by the court to assist it in determining the parental responsibility and time-sharing issues, contending that these professionals were biased and acting unethically. These complaints were also determined to be unfounded.
After hearing four days of testimony and observing the demeanors of both parents, the trial court found that the Mother had “actively interfered with the love and emotional ties that previously existed between the Father and the children.” The court characterized the Mother’s actions as the worst case of parental alienation that it had ever seen. Based on the Mother’s egregious behavior, the trial court assigned sole parental responsibility for all four children to the Father and completely suspended the Mother’s time-sharing with the children. While the trial court designated the suspension of the Mother’s time-sharing as temporary, the court’s order did not set forth what steps the Mother could take to reestablish time-sharing with the children. Instead, the court ordered that the Father, after consultation with “professionals,” could determine when the Mother’s time-sharing would be reinstated.
In this appeal, the Mother argues that the trial court abused its discretion by awarding sole parental responsibility for the children to the Father and by suspending her time-sharing with them. However, the record supports the conclusion that the Mother illegitimately used every tactic available to a parent who is legitimately concerned about the safety of her children in an effort to gain a tactical advantage in this custody case. Accordingly, we cannot agree that the trial court abused its discretion in awarding the Father sole parental responsibility and in suspending the Mother’s time-sharing.
However, despite facts fully justifying the trial court’s decision to completely suspend the Mother’s time-sharing, case law requires that we reverse the trial court’s order to the extent that it omits a ruling on the specific steps the Mother must take to reestablish time-sharing and to' the extent that it delegates the decision of whether and when to reinitiate time-sharing to the Father. “Although termination of visitation rights is disfavored, ... the trial court has discretion to restrict or deny visitation when necessary to protect the welfare of the children.” Hunter v. Hunter, 540 So.2d 235, 238 (Fla. 3d DCA 1989). However, when the court exercises this discretion, it must clearly set forth the steps the parent must take in order to reestablish time-sharing with the children. *457 Id.; see also Ross v. Botha, 867 So.2d 567, 571 (Fla. 4th DCA 2004). Essentially, the court must give the parent the key to reconnecting with his or her children. An order that does not set forth the specific steps a parent must take to reestablish time-sharing, thus depriving the parent of that key, is deficient because it prevents the parent from knowing what is expected and prevents any successor judge from monitoring the parent’s progress. See Ross, 867 So.2d at 571.
Here, the order at issue does not identify what steps or actions the Mother must take to reestablish time-sharing with her children. Instead, the order states only that “[t]he Court recommends to the Mother that she seek therapy to address the issues of her delusional thinking and interactions with the children. Her decision in this regard will be an important factor in considering whether contact with the children should be reestablished.” The utter lack of identification of the concrete steps that the Mother must take to reestablish time-sharing with her children deprives her of the key to reconnecting with her children and renders the trial court’s order erroneous.
Moreover, it is the trial court’s responsibility to ensure that an appropriate relationship is maintained between a parent and his or her children, and that responsibility “cannot be abdicated to any parent or expert.” McAlister v. Shaver, 633 So.2d 494, 496 (Fla. 5th DCA 1994); see also Letourneau v. Letourneau, 564 So.2d 270, 270 (Fla. 4th DCA 1990). Thus, a reasonable time-sharing schedule based on the parent’s individual circumstances must be created based on the exercise of the court’s discretion, not the other parent’s. Letourneau, 564 So.2d at 270.
In this case, however, the trial court’s order provides that “the Father, with input from professionals” shall make the determination of when changes in the Mother’s conduct are sufficient to allow her to reestablish contact with the children. This ruling impermissibly delegates the court’s obligation to ensure appropriate contact between the Mother and her children to the Father and various unidentified “professionals.” However well-intentioned and trustworthy the trial court may believe the custodial parent to be, the key to reconnecting with one’s children may not be placed solely in the hands of the other parent. The trial court’s ruling on this issue constitutes an abuse of discretion that requires reversal.
Accordingly, we reverse the trial court’s order on parental responsibility and time-sharing to the extent that it gives the Father sole possession of the key to determining whether and how the Mother can reestablish time-sharing with the children. On remand, the trial court must set forth the specific steps that the Mother must take in order to reestablish time-sharing, and it must provide guidance concerning what proof of parental rehabilitation it is seeking from the Mother.[1] Further, the trial court must reserve jurisdiction to consider the Mother’s progress and may not delegate to the Father and unidentified “professionals” the determination of whether and when the Mother is sufficiently rehabilitated to have time-sharing with *458 her children. In all other respects, the court’s order is affirmed.
Affirmed in part, reversed in part, and remanded.
SILBERMAN and MORRIS, JJ., Concur.

. We recognize that this will likely require the trial court to consider input from the psychologists and social workers who have been involved with the family and who are in the best position to assist the trial court in identifying benchmarks against which the Mother’s progress may be measured. We also recognize that this may be a slow process. However, absent such benchmarks being identified by the trial court, the "temporary” nature of the suspension of the Mother’s time-sharing will become illusory.