NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LAURIE P. SLATON,               )
                                )
            Appellant,          )
                                )
v.                              )          Case No. 2D15-5614
                                )
MICHAEL JAMES EDWARD SLATON,    )
                                )
            Appellee.           )
_____ )

Opinion filed July 15, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Susan St. John, Judge.

Ingrid Anderson, Clearwater, for Appellant.

Thomas J. Donnelly, Clearwater, for
Appellee.

VILLANTI, Chief Judge.

        Laurie P. Slaton (the Mother) appeals the trial court's nonfinal order that

temporarily transferred primary residential custody of her two children to Michael James

Edward Slaton (the Father).[1]  We affirm the trial court's order to the extent that it gives

temporary primary residential custody of the parties' children to the Father.  However,

_____

        [1]We have jurisdiction.  See Fla. R. App. P. 9.130(a)(3)(C)(iii)(b).

because the order does not provide the Mother with any guidance as to the steps she must take if she wishes to reestablish primary residential custody and because the order does not include a timesharing schedule, we must reverse and remand for further proceedings.

The parties' marriage was dissolved in 2012 by the courts of the state of Washington. On the date of the dissolution judgment, the Mother was living in Florida and the Father was deployed on active duty in Qatar with the U.S. Air Force. The Washington dissolution judgment gave the Mother primary residential custody with the Father having "visitation" by Skype or phone call.

Upon the Father's return to the United States, he was transferred to Louisiana. Once there, he and the Mother reached an agreement concerning timesharing, which allowed the children to spend time with the Father in Louisiana while the Mother remained in Florida. The Mother and Father generally agreed on where and how to exchange the children, and it appears that they shared the expenses of those exchanges.

In the summer of 2015, the parties planned to have the children spend most of June and July with the Father in Louisiana before returning to the Mother in Florida in August. However, while the children were with the Father, the Mother was arrested for aggravated battery with a weapon on her paramour, and the paramour was arrested for battery on the Mother as well. These arrests brought to light the fact that there had been prior domestic violence between the Mother and her paramour, who had lived off and on with the Mother and the children, and that the children had witnessed some of this domestic violence. At that point, the Father refused to return the children

to the Mother, which prompted her to begin proceedings in the Florida courts to domesticate and enforce the Washington dissolution judgment. The Father responded with a request for temporary residential custody, which the trial court granted after an evidentiary hearing. However, the trial court's order did not provide a timesharing schedule for the Mother and the children, and it did not delineate the actions required of the Mother if she wished to regain primary residential custody. The Mother argues that all of these rulings were erroneous. We agree in part.

As to the temporary modification of primary residential custody, we readily affirm the trial court's ruling. A trial court may enter an order temporarily modifying child custody—even without notice to the opposing party—if there is evidence of a bona fide emergency situation. See, e.g., Smith v. Crider, 932 So. 2d 393, 398 (Fla. 2d DCA 2006). Further, a trial court may modify parental responsibility and timesharing in the absence of an emergency if there is a "factual basis sufficient to show that conditions have become materially altered since the entry of the previous decree." Wade v. Hirschman, 903 So. 2d 928, 933 (Fla. 2005) (quoting Frazier v. Frazier, 147 So. 464, 467 (Fla. 1933)).

Here, the trial court was faced with evidence that the Mother had been arrested and charged with felony domestic violence battery with a weapon on her paramour and evidence of the Mother's request that she be permitted continued contact with her paramour despite his arrest for battery on her. Further, there was evidence that Florida's Department of Children & Families ("DCF") had initiated an investigation of the Mother's home based on these domestic violence arrests. In addition, there was evidence that the Mother and her paramour had engaged in prior domestic violence in

front of the children and that a prior DCF investigation had been terminated based on the Mother's assurances that she had severed her relationship with this same paramour. This evidence was sufficient to support the trial court's finding that an emergency situation existed and its conclusion that modification of the Mother's custody of and visitation with the children was necessary, at least until such time as the Mother's charges were resolved and the DCF investigation was concluded. In addition, this evidence was sufficient to support the trial court's finding that this situation constituted an unanticipated, substantial, and material change in circumstances. And, taken together, this evidence supports the conclusion that it was in the children's best interests to change primary residential custody to the Father until such time as the court could be reasonably assured that the Mother would be available to parent the children without domestic violence occurring in the home. Therefore, we affirm the portion of the trial court's ruling that granted the Father's emergency motion to temporarily modify primary residential custody.

However, on this same record, we must agree with the Mother that the trial court erred by unqualifiedly transferring primary residential custody to the Father without also specifying the steps necessary for the Mother to regain residential custody. As this court has repeatedly held, a trial court may not modify primary residential custody based on a parent's behavior without also identifying the steps that the parent must take to restore the original custody arrangement. See Perez v. Fay, 160 So. 3d 459, 466 (Fla. 2d DCA 2015); Grigsby v. Grigsby, 39 So. 3d 453, 457 (Fla. 2d DCA 2010). As we stated in both cases,

> when the court exercises its discretion to reduce or eliminate time-sharing with a parent's children,

- 4 -

> the court must give the parent the key to reconnecting with his or her children. An order that does not set forth the specific steps a parent must take to reestablish time-sharing, thus depriving the parent of that key, is deficient because it prevents the parent from knowing what is expected and prevents any successor judge from monitoring the parent's progress.

> We also held that the court had the obligation to identify "concrete steps" in the final judgment that the parent must take to reestablish time-sharing.

Perez, 160 So. 3d at 466-67 (quoting Grigsby, 39 So. 3d at 457) (citation omitted). In both cases, we were compelled to reverse and remand for further proceedings because of the trial courts' failures to identify the necessary steps for the mothers to regain custody and timesharing. See Perez, 160 So. 3d at 467; Grigsby, 39 So. 3d at 457.

Here, as in both Perez and Grigsby, the trial court's order wholly fails to set forth the steps the Mother must take to reestablish primary residential custody of the children. While the trial court made various references during the hearing to the Mother's needing counseling to address certain issues, the trial court did not incorporate any of those references into its order or give the Mother any instructions as to what she needed to do to prove to the court that she had addressed them. This omission requires us to reverse and remand for further proceedings.

Moreover, the temporary order is also deficient because it does not incorporate any timesharing plan whatsoever for the Mother nor does it contain any support for the proposition that zero timesharing for the Mother is the appropriate result. As this court has held, "a parent has a constitutionally protected ' "inherent right" to a meaningful relationship with his [or her] children.' " Perez, 160 So. 3d at 465 (alteration

- 5 -

in original) (quoting <u>Schutz v. Schutz</u>, 581 So. 2d 1290, 1293 (Fla. 1991)).  Therefore, "time-sharing privileges should not be denied to either parent as long as the parent conducts himself or herself, while in the presence of the children, in a manner which will not adversely affect the children."  <u>Id.</u> (citing <u>Yandell v. Yandell</u>, 39 So. 2d 554, 555 (Fla. 1949)).  The complete cessation of any and all timesharing is a harsh result that is rarely proper.

In fact, the order modifying primary residential custody from the Mother to the Father states that it is incorporating a timesharing plan, but it does not actually include, attach, or incorporate a timesharing schedule of any kind.  Thus, the Mother has been left with no timesharing at all, or, at best, timesharing at the sole discretion of the Father through what appears to be an inadvertent omission by the trial court.  Under these circumstances, the omission of any timesharing plan constitutes reversible error which must be corrected on remand.

Affirmed in part, reversed in part, and remanded for further proceedings.

KHOUZAM and SALARIO, JJ., Concur.